FILED

2023 Mar-29  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **RONTAVUS DEANDRE THREATT,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) **Case No. 1:22-cv-08004-KOB** |
| | )            **1:18-cr-385-KOB-JHE** |
| | ) |
| **UNITED STATES OF** | ) |
| **AMERICA,** | ) |
| | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM OPINION

Pursuant to a *binding* plea agreement, Rontavus Deandre Threatt pled guilty on March 7, 2019 to six counts involving drug and firearm offenses in an eight count Superseding Indictment.  On October 18, 2019, the court sentenced him to the stipulated total sentence of 228 months imprisonment on the six counts to which he pled guilty, and the Government dismissed the remaining two counts in the Superseding Indictment.  (Cr. Docs. 14, 24, 36, 47, & 49). [1]  This case is now before the court on Threatt's motion to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255, the Government's response in opposition, and Threatt's reply.  (Cv. Docs. 1, 2, 3, 9, & 13).

As grounds for habeas relief, Threatt claims that his counsel was ineffective for (1) failing to communicate with Threatt and inform him of the relevant circumstances and likely consequences of pleading guilty; (2) failing to conduct an adequate and independent

---

[1] Documents from Threatt's criminal trial, case number 1:18-cr-385-KOB-JHE, are designated "Cr. Doc. ___."
Documents from Threatt's § 2255 action, case number 1:22-cv-8004-KOB, are designated "Cv. Doc. ___."

pretrial investigation; (3) failing to negotiate a more favorable plea agreement; and (4)

failing to review the Presentence Investigation Report (PSR) with Threatt or file objections

to it.[2]  After reviewing Threatt's motion to vacate and all the filings in this case, the court

finds that his habeas claims lack merit. Accordingly, for the reasons below, the court will

**DENY** Threatt's motion to vacate without an evidentiary hearing.

## I.      BACKGROUND

In May 2017, a confidential informant told the Talladega County Drug Task Force

that he had purchased methamphetamine and heroin from Threatt for some time.  The

TCDTF and ATF conducted four controlled buys through the confidential informant at

Threatt's house on May 9, May 12, May 24, and June 13, 2017. (Cr. Doc. 24 at 4).  The

videos of the controlled buys show a black handgun next to the methamphetamine, Threatt

holding a firearm, and audio of the confidential informant discussing the firearm.  (Cr. Doc.

24 at 5).

During the execution of the search warrant at Threatt's home on June 16, 2017,

agents found oxycodone in Threatt's pockets, heroin, methamphetamine, crack cocaine,

marijuana, and fentanyl; a shotgun behind the front door; a loaded Taurus .45 pistol behind

the speaker box in the living room consistent with the gun seen in the controlled buy videos;

ammunition; clear baggies; scales; and three cell phones.  Threat was the only person at his

home at the time of the search.  (Cr. Doc. 24 at 5-6).

On June 17, 2017, Threatt engaged in a recorded jail telephone call with Jessica

---

[2] Threatt agrees that his pro se habeas motion raises only these four grounds.  *See* (Cv. Doc. 13 at 2) (stating that the Government in its response gave an "accurate summation" of the "grounds raised.")

Jordan, in which Threatt "discussed what he had in his pockets and the bedroom and the firearms he had in the house."  (Cr. Doc. 24 at 6).

A grand jury returned a Superseding Indictment for Threatt on eight counts: distributing methamphetamine and heroin in Counts One, Three, and Five; possessing with intent to distribute methamphetamine in Count Six; using and carrying a firearm during and in relation to and in furtherance of a drug trafficking crime in Counts Two, Four, and Eight; and being a felon in possession of a firearm in Count Seven.  The court appointed Glennon Threatt with the Federal Public Defender's Office to represent Threatt at his plea and sentencing.[3]  (Cr. Doc. 1 & docket entry on April 16, 2018).

Pursuant to a negotiated binding plea agreement, Threatt pled guilty to Counts One through Six on March 7, 2019, and the Government agreed to dismiss Counts Seven and Eight.  On October 18, 2019, Threatt testified at the sentencing hearing that he took "full responsibility" for his crimes. The court accepted the binding plea agreement and sentenced Threatt to the stipulated sentence of 228 months imprisonment.  (Docs. 36 & 47).

Threatt filed a *pro se* appeal on January 28, 2020, asking the court to remove his counsel and appoint different counsel for his appeal.  The court granted Threatt's request and appointed J.D. Lloyd to represent Threatt on his appeal.  Lloyd filed an *Anders* brief with the Eleventh Circuit claiming the appeal would be frivolous and asking the Court to withdraw him from further representation of Threatt. The Court granted Lloyd's motion to withdraw and affirmed Threat's convictions and sentences on all six counts.  (Cv. Doc. 2 at

---

[3]  Threatt has no known familial relation to his counsel Glennon Threatt.  *See* (Cr. Doc. 49 at 2-3).  To avoid confusion, the court will refer to Glennon Threatt as "counsel."

7 & Cr. Doc. 52-1 at 2).

The BOP website indicates that Threatt is currently housed at USP Lompoc, with a projected release date of May 21, 2034.

## II.    DISCUSSION

All of Threatt's habeas grounds are rooted in his alleged claims of ineffective assistance of counsel.  But Threatt has failed to meet the standard for ineffective assistance of counsel under *Strickland* for any of his Sixth Amendment claims.  S*ee Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Threatt must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, *and* (2) that he suffered prejudice because of that deficient performance. *See Strickland*, 466 U.S. at 684-91.  Threatt has the burden to prove *both* prongs of *Strickland* to demonstrate ineffective assistance of counsel, and the court "'need not address both prongs if the petition has made an insufficient showing on one of them.'"  *See Bishop v. Warden, GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697).

Deficient performance is "'representation [that] f[alls] below an objective standard of reasonableness.'" *Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 551 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 688).  Counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690.  A reviewing court "must indulge a *strong presumption* that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (emphasis added).  Because of this strong presumption, a movant "'must establish that no competent counsel would have taken the

4

[challenged] action.'" *Khan v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting *Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc) and citing *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005)).

Threatt must also show that his counsel's deficient performance prejudiced him. Threatt can show prejudice if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Threatt must show more than "the error had some *conceivable* effect on the outcome of the proceeding." *See Strickland*, 466 U.S. at 693. In this case, Threat can show neither deficient performance nor prejudice on any of his ineffective assistance of counsel grounds for habeas relief.

### Failure to Communicate with Threatt or Explain Consequences of Pleading Guilty

Threatt claims that his counsel was ineffective during the plea negotiations for failing to communicate with him or explain the consequences of pleading guilty. Plea negotiations are a "critical stage" of a criminal proceeding to which the Sixth Amendment right to counsel applies. *See Missouri v. Frye*, 132 S. Ct. 1399, 1406-07 (2012). In an ineffective assistance of counsel claim where a prisoner challenges the validity of a plea agreement based on the actions of counsel, the *Strickland* standard applies. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 370 (1985). To avoid rendering constitutionally deficient performance, an attorney "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the [government's] offer and going to trial." *Stano v. Duggar*, 921 F.2d 1125, 1151 (11th Cir. 1991).

To determine whether a plea was knowing and voluntary, the court looks to the record of the plea colloquy and the signed written plea agreement. *See Vanaman v. United States*, No. 16-15452-E, 2017 WL 11684637, at *4 (11th Cir. Sept. 1, 2017) (citing *United States v. Jones*, 143 F.3d 1417, 1420 (11th Cir. 1998)). The representations of the defendant at the plea hearing, as well as any findings made by the judge accepting the plea, constitute "'a formidable barrier in any subsequent collateral proceedings.'" *See Vanaman*, 2017 WL 11684637, at *4 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 1629 (1977)).

Further, a strong presumption exists that statements made by a defendant during his plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Consequently, a defendant bears a "heavy burden to show that his statements under oath were false." *See Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (citing *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)).

Here, Threatt argues that he had no "reasonable communication" with his counsel throughout his case and could not "effectively participate in his defense." He claims that his counsel "failed to reasonably consult with Threatt about the means to be used to accomplish his objectives other than push Threatt to plead guilty." Threatt also claims that his counsel did not explain to him the "general strategy and prospects of success and the likely result in the sentence he would receive should Threatt opt to proceed to trial or plead guilty." (Cv. Doc. 2 at 13). But the record in this case belies Threatt's claims.

Threat testified under oath at the plea hearing that he had discussions with his counsel regarding the criminal charges involved in his case, the sentencing guidelines, and all the rights that Threatt was giving up by entering his plea of guilty pursuant to his binding plea

agreement.  (Cr. Doc. 49 at 18, 45).  Threatt also testified under oath at the plea hearing that he had "sufficient time . . . to discuss all the charges in the Superseding Indictment" with his counsel and that he was satisfied with his counsel's representation of him.  (Cr. Doc. 49 at 31).  The court gives great weight to Threatt's statements under oath.

Although the Government submitted no affidavit from Threatt's counsel regarding his communications with Threatt about the likelihood of his chances at trial or the consequences of his guilty plea, an affidavit was not necessary because of the record in this case.  Threatt's counsel stated at the plea hearing that he discussed all these matters with Threatt; that he had sufficient time to investigate the charges against Threatt and the possible defenses Threatt could raise; that he was satisfied that Threatt "fully understood the charges against him and the consequences of entering a plea of guilty"; and that he had "generally given [Threatt] counsel and advice."  (Cr. Doc. 49 at 18, 19, 31, 46).  And Threatt did *not* object to any of his counsel's statements at the plea hearing.

And, during the plea colloquy, Threatt's counsel explained to the court that Threatt was facing a sentence of "more than life" in prison were he to proceed to trial on all eight counts and be convicted.  (Cr. Doc. 49 at 10).  And Threatt's counsel stated at the plea hearing that he used that "advisory guideline" to "advise my client during the plea negotiations."  (Cr. Doc. 49 at 9).  Counsel's statements at the hearing indicate that counsel communicated with Threatt about the possible outcomes if Threatt were to proceed to trial and the consequences of Threatt pleading guilty.  And Threatt did *not* object to any of his counsel's statements during the plea colloquy.

Here, the statements of both Threatt under oath and his counsel at the plea hearing

contradict Threatt's current unsubstantiated claims that he had no reasonable communication with his counsel about the consequences of pleading guilty or his options in his case. Threatt claims that his counsel told him to agree with the judge at the plea hearing and "not make waves or the judge would not accept his guilty plea and he would be forced to proceed with trial and lose." (Cv. Doc. 13 at 5-6). But the court gave Threatt every opportunity at the plea hearing to ask questions, consult with his counsel, or make the decision to not plead guilty. *See* (Cr. Doc. 49). And Threatt chose to remain silent. He has failed to meet his heavy burden to show that his statements under oath at the plea hearing were false.

Moreover, Threatt stated in his reply to the Government's response that "trial counsel predicted that if [Threatt] proceeded to trial that he would lose and receive a significantly harsher sentence." And Threatt states in his reply that counsel made that prediction in a "presumably private conversation." (Cv. Doc. 13 at 4). So, Threatt admits that his counsel *did* communicate with him about his case and counseled him to plead guilty based on the overwhelming evidence against Threatt and the likelihood of a more severe sentence.

Threatt cannot show that his counsel was ineffective for failing to communicate with him when he acknowledges that his counsel did in fact communicate with him about his chances of success at trial and about the general strategy to negotiate a plea agreement. The record shows that Threatt's counsel did communicate with Threatt; that counsel advised Threatt that he would lose at trial given the controlled buy videos; and that Threatt's counsel should pursue the general strategy of negotiating a favorable plea deal. Now, Threatt takes issue with counsel's prediction about Threatt's chances of success at trial and advise to plead guilty. But Threatt's dissatisfaction with his counsel's reasonable advice about the probable

8

outcome at trial and about pleading guilty does not constitute deficient performance on his counsel's part.

Threatt argues, without any legitimate basis, that counsel's prediction that Threatt would lose if he proceeded to trial and advice to plead guilty constituted ineffective assistance of counsel. Threatt claims that his counsel gave him "erroneous advice" that was "significantly flawed." (Cv. Doc. 2 at 23). But the court disagrees. Counsel's prediction about Threatt's chances at trial and advice to pursue a favorable plea deal were more than reasonable under the facts of this case. Counsel presumably knew that the Government had overwhelming evidence against Threatt, including video evidence of *four* controlled buys implicating Threatt on all eight counts in the Superseding Indictment. And counsel presumably knew that those controlled buys were a legitimate basis for the search warrant of Threatt's house where the agents found the drugs and firearms. So, Threatt's counsel *reasonably* predicted that Threatt would not be successful at trial and *reasonably* counseled him to accept a plea agreement that dismissed two of the eight counts against Threatt and considerably lessened his time in prison. Those two dismissed counts would have added a *minimum* of 240 months imprisonment and a maximum of life imprisonment to Threatt's sentence had a jury found him guilty on all eight counts at trial. *See* (Cv. Doc. 9 at 18 & Cr. Doc. 49 at 10). No reasonable attorney would have counseled Threatt otherwise given the facts of this case.

And Threatt cannot show prejudice on this claim. The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," meaning a defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*,

474 U.S. at 59.

Threatt claims that had counsel "properly advised him of his actual correct options available," a reasonable probability exits that he would have "opted to stand trial" and would have "received a substantially lower sentence." (Cv. Doc. 13 at 5). But Threatt failed to explain or show what other "actual correct options" his counsel should have presented to him given the facts in Threatt's case. As discussed above, counsel reasonably advised Threatt to plead guilty, accept the plea agreement that would dismiss two counts, and substantially reduce his sentence from the possibility of life imprisonment to the stipulated imprisonment term of 228 months. The court cannot imagine any other "actual correct option" that counsel should have presented to Threatt given the facts of this case.

Threatt also has failed to show that but for his counsel's alleged failure to communicate with him regarding the consequences of pleading guilty he would have proceeded to trial. With the overwhelming evidence against him and the favorable plea agreement that his counsel negotiated on Threatt's behalf, Threatt cannot show a reasonable probability that he would have opted to take his chances at trial where he would have most likely been convicted on all eight counts and received a much longer prison sentence. At the plea colloquy, the court discussed with Threatt that, if the Government had not agreed to dismiss Counts Seven and Eight and he went to trial and lost, he was facing up to *life imprisonment* as a career offender. (Cr. Doc. 49 at 10). No reasonable defendant would have turned down a plea agreement dismissing two counts and *substantially* reducing the possible term of his imprisonment where the Government's evidence included videos of four controlled buys implicating the defendant, potential testimony from the confidential

10

informant who bought drugs from him, and statements by the defendant in a recorded prison phone call that implicated himself on both the drug and gun charges.

And Threatt has failed to show any possibility, much less a reasonable one, that he would have been successful at trial or how he would have received a "substantially lower sentence" had he proceeded to trial. True, if the jury acquitted him on all eight counts, Threatt would receive no imprisonment. And if the jury acquitted him on at least three of the counts, his sentence *may* have been below his stipulated sentence. But the chances of a jury acquitting Threatt on any of the eight counts after watching him sell drugs from his house on the controlled buy videos were slim to none. So, Threatt's conclusory statements that he would have gone to trial, won, and received a substantially less sentence have no reasonable basis in fact given the record in this case and are insufficient to show prejudice.

Because Threatt cannot show deficient performance or prejudice on this claim, it fails.

***Failure to conduct an Adequate and Independent Pretrial Investigation***

Threatt also argues that his counsel was ineffective for failing to conduct an adequate and independent pretrial investigation prior to his plea hearing, "except for reading the government's case file and discussing it with the prosecutor." He claims that counsel "failed to research the case law, interview witnesses, or investigate the facts of Threatt's case." (Cv. Doc. 2 at 14). And he argues that counsel's failure to conduct a pre-trial investigation or hire an investigator to conduct one resulted in counsel's failure to file a motion to dismiss for insufficient evidence or a motion to suppress based on the search warrant containing the incorrect address for Threatt's house where the controlled buys took place. (Cv. Doc. 2 at

17-18).  Threatt claims that counsel's failure to conduct the pretrial investigation into these matters and file these pre-trial motions constitutes ineffective assistance of counsel. (Cv. Doc. 1 at 13) (internal citations omitted).  But Threatt's arguments again fail.

As previously mentioned, the Government submitted no affidavit from Threatt's counsel regarding whether he conducted any type of formal pretrial investigation.  But an affidavit from counsel is not necessary given the clear record in this case.  Even *if* Threatt's counsel decided to conduct no formal pretrial investigation other than evaluating the government's evidence and talking with prosecutors, that decision was reasonable.

Counsel has a "duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations *unnecessary*."  *Strickland*, 466 U.S. at 690-91.  Here, given the circumstances of this case, counsel's alleged failure was reasonable because a pretrial investigation into these matters was unnecessary.  The Government's evidence against Threatt was seemingly insurmountable, including *four* video-taped controlled drug buys that implicate Threatt's guilt on both the drug and gun charges.  Given this overwhelming evidence, counsel's failure to conduct an independent, extensive formal pretrial investigation was reasonable.

Also, given this overwhelming evidence against Threatt, counsel was reasonable to *not* file a motion to dismiss Counts Two and Four for *insufficient* evidence.  Those counts involve Threatt's possession and use of a firearm in relation to and in furtherance of his drug trafficking crimes.  Threatt argues that, because law enforcement did not confiscate any guns "during the said controlled buys," no guns were "admitted or presented as evidence," and the guns were not "validated to be a 'real' firearm," the Government could not prove Counts

Two and Four against him. But his arguments are flawed.

Threatt seems to ignore the facts that he pled guilty and his plea agreement stipulated that the guns seized during the search of his home belonged to him and were functional guns. (Cr. Doc. 24 at 6).  And the controlled buy videos showing a firearm in Threatt's home during the drug transactions and the recovery of the Taurus .45 caliber pistol during the search of Threatt's home were more than sufficient evidence for a jury to conclude that Threatt possessed and used a firearm in relation to or in furtherance of his drug trafficking crimes.

And the fact that law enforcement did not confiscate the guns during the controlled buys is of no consequence.  In fact, law enforcement waiting until they obtained a valid search warrant of Threatt's home to seize the guns visible on the controlled buy videos actually weakens Threatt's argument that counsel should have filed a motion to dismiss Counts Two and Four.  Based on the facts in this case, counsel had no reasonable basis on which to file a motion to dismiss Counts Two and Four based on insufficient evidence. Counsel's failure to file a meritless motion to dismiss was reasonable under the circumstances of this case and did not constitute deficient performance.  *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit.").

Moreover, counsel was not ineffective for failing to file a meritless motion to suppress the evidence seized during the lawful search of Threatt's house.  *See Treffinger v. United States*, 798 F. App'x 428 (11th Cir., *cert. denied*, 141 S. Ct. 317 (2020) (finding that counsel's failure to file a meritless suppression motion was not ineffective assistance of

counsel).  Threatt argues and the Government admits that the search warrant executed on

Threatt's residence at 511 Lawrence Avenue contained the wrong street number—515

Lawrence Avenue.  (Cv. Doc. 9 at 16).  But the Government asserts, and Threatt does not

disagree or show otherwise, that the search warrant "contained an accurate detailed

description of the property and an actual photograph of the residence captured from the video

recording made by the confidential source from the controlled purchase which established

probably cause to search the premises."  *See* (Cv. Doc. 9 at 16).

An erroneous street number of the place to be searched does not necessarily render a

warrant invalid.  *United States v. Harbison*, 523 F. App'x 569, 573 (11th Cir. 2013) (citing

*United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986)).  The Fourth Amendment

requires only that the warrant "describe the premises in such a way that the searching officer

may with reasonable effort ascertain and identify the place intended" to be searched.  *Burke*,

784 F.2d at 1092.  A warrant with an incorrect street number is not fatal where it gives a

detailed description of the place to be searched and where the searching agents know the

property to be the same location where probable cause to search exists because they had

previously been at the property.  *Burke*, 784 F.2d at 1092-1093.

Here, the agents were mistaken about what street number to put in the warrant, but

they had a detailed description and actual photograph of the property subject to the search in

the warrant. And law enforcement had overseen four controlled buys at this address and

knew that property was the same location where probably cause to search existed.  So, the

erroneous street number did not make the warrant invalid.

And, according to the Government, Threatt's counsel "raised the issue with [the

Government] and advised that he had researched the issue and concluded that filing such a motion would be fruitless." (Cv. Doc. 9 at 17). So, counsel's failure to file a meritless motion to suppress did not constitute deficient performance. *See Treffinger v. United States*, 798 F. App'x 428 (11th Cir., *cert. denied*, 141 S. Ct. 317 (2020) (finding that counsel's failure to file a meritless suppression motion was not ineffective assistance of counsel).

And Threatt cannot show prejudice on this claim because has failed to show a reasonable probability that he would have gone to trial had counsel conducted a formal pretrial investigation or that the outcome of the case would have been different if counsel has filed a motion to dismiss or suppress evidence. Presumably, his counsel would have explained to Threatt that the Government had more than enough evidence to convict him at trial. And had Threatt decided to go to trial, the jury likely would have convicted him on all eight counts in the Indictment based on the videos of the controlled buys and his sentence would have been much longer.

Given these facts, Threatt cannot show that a more formal pretrial investigation into this matter would have changed anything or led him to take his chances at a trial, especially when the Government was willing to dismiss two of the eight counts in the Indictment and considerably lessen his potential sentence in exchange for his plea of guilty. And as explained above, both a motion to dismiss the Indictment and a motion to suppress the evidence would have been meritless. So, Threatt cannot show a reasonable probability that had counsel filed either of these motions the outcome of his case would have been any different.

Threatt has failed to show deficient performance or prejudice on this claim, and it

fails.

### Failure to Negotiate a More Favorable Plea Agreement

Threatt also argues that his counsel was deficient for failing to negotiate a more favorable plea deal. But Threatt's argument not only fails on the record but borderlines absurd.

Threatt fails to identify what counsel could have done to secure a more favorable plea agreement. Even though the evidence in this case was *overwhelming* against Threatt given the video evidence of the four controlled drug buys implicating Threatt, counsel negotiated with the Government for the dismissal of two of the eight counts in the Superseding Indictment, resulting in a *considerably* lower sentence for Threatt. As mentioned previously, those two dismissed counts would have added a *minimum* of 240 months imprisonment and a maximum of life imprisonment to Threatt's sentence had a jury found him guilty on all eight counts at trial. *See* (Cv. Doc. 9 at 18 & Cr. Doc. 49 at 10). And only including the six counts to which Threatt pled guilty, Threatt's low end guidelines range would have been 308 months. Yet, Threatt's counsel favorably negotiated a term of imprisonment *80 months lower* than that low end guideline range. *See* (Cr. Docs. 24 and Cr. Doc. 35 at 11-12).

And the Government notes in its response that, *before* the passage of the First Step Act, Threatt's counsel successfully negotiated a stipulated plea deal of 300 months imprisonment, which included the dismissal of Counts Seven and Eight. (Cv. Doc. 9 at 18-19). After this first stipulated plea agreement but before Threatt's plea hearing, the First Step Act became effective and eliminated the "stacking" of penalties for violations of 18 U.S.C. § 924(c) within the same Indictment. *See* First Step Act, Public Law 115-391. But,

the First Step Act had no true impact on the first stipulated plea agreement because Threatt's stipulated sentence of 300 months imprisonment was still 8 months below the low end of his guidelines range—308 months imprisonment—even after the First Step Act. But Threatt's counsel went back to the Government after the First Step Act became effective and successfully negotiated another 72 months or *6 years* off the stipulated sentence from 300 months to his 228 months! As the Government noted in its response, Threatt "owes his trial counsel a debt of gratitude rather than an accusation of incompetence." (Cv. Doc. 9 at 19). The court agrees.

Threatt's counsel's efforts in negotiating this new stipulated agreement of 228 months imprisonment greatly benefited Threatt and considerably lessened his potential sentence. Threatt cannot show that no reasonable counsel would have negotiated such an incredibly beneficial plea deal for Threatt or could have secured a more favorable deal. In fact, given the favorable plea deal his counsel secured for him, Threatt's argument on this issue seems absurd. But no good deed goes unpunished. So, Threatt has failed to show that counsel's performance was deficient in failing to negotiate a more favorable plea agreement.

Even if Threatt could somehow show deficient performance on this issue, he cannot show prejudice. Threatt cannot show a reasonable probability that his plea deal would have been "more favorable" to him but for counsel's alleged deficient performance in not negotiating a more favorable plea deal. Without any explanation or support, Threatt claims that "[i]t is likely that if the case proceeded to trial that Threatt would have been acquitted of Counts 2s, 4s, and 8s" and counsel should have negotiated for the dismissal of all of those counts, or "perhaps two or three counts." (Cv. Doc. 13 at 7). But his arguments ignore the

facts in record.

As discussed previously, the facts in this case show that the Government had more than sufficient evidence for a jury to convict Threatt on *all eight* counts in the Superseding Indictment, including video evidence of Threatt selling drugs and showing guns on those video recordings.   His conclusory statements that a jury likely would have acquitted him on and Counts Two, Four, and Eight and that his counsel could have negotiated the dismissal of at least two of those counts have absolutely no factual or legal support in the record.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to state a claim for ineffective assistance of counsel).

The fact that Threatt's counsel negotiated the dismissal of Counts Seven and Eight given the overwhelming evidence against Threatt on all eight counts quite frankly was incredible.  And the Government stated at the sentencing hearing that "it's almost unheard of that we dismissed counts that we could prove readily" and that the Government "almost never" asks for a "significant reduction below the low end in absence of substantial assistance."  (Cr. Doc. 47 at 10). But somehow, Threatt's counsel was able to work with the Government to dismiss two counts that the Government could easily prove using the videos of the controlled buys, guns found in Threatt's house during the search of it, and the jail phone call in which Threatt implicates himself.  So, Threatt's conclusory statement that he could have received a "more favorable" plea deal has no basis in fact and defies reason.  The court cannot imagine what more Threatt's counsel could have done to secure an even more favorable deal than the one Threatt received.

Because Threatt can show neither deficient performance nor prejudice on this claim, it also fails.

***Failure to Review or File Objections to the PSR***

Threatt also claims that counsel provided ineffective assistance of counsel by failing to "review, discuss and explain the PSR adequately with Threatt prior to sentencing." Threatt claims that his counsel only "read some parts of the PSR to Threatt without a thorough explanation." (Cv. Doc. 13 at 7).  He also argues that his counsel was ineffective for failing to object to the drug quantity contained in the PSR.  (Cv. Doc. 13 at 8).  But these claims also fail.

The record belies Threatt's claim that counsel failed to adequately explain the PSR to him.  Threatt testified under oath at the sentencing that Threatt had "read and discussed the presentence investigation report with [his] attorney" and had no objections to any of the contents in the PSR.  (Cr. Doc. 47 at 3).  And Threatt admits that his counsel read part of the PSR to him but argues that counsel's explanation was not "thorough" enough.  (Cv. Doc. 2 at 23).  Threatt fails to explain what parts of his counsel's explanation were insufficient or any of the specifics about what counsel discussed with or explained to Threatt.  And the court gives great weight to Threatt's statement made under oath that Threatt discussed the PSR with his counsel and Threatt had *no objections* to any of its contents.  So, Threatt has failed to show that his counsel was deficient in explaining the PSR to him.

Threatt also argues that counsel's performance was deficient for failing to object to the drug attribution amount in the PSR that formed the base offense level.   Threatt seems to argue that his base offense level should have been based on only 5 grams of

methamphetamine instead of 51.85 grams of methamphetamine attributable to him in the PSR because the Indictment only charged him with "5 grams or more" of methamphetamine in Counts Five and Six of the Superseding Indictment.  (Cr. Doc. 2 at 23) But Threatt's argument fails for several reasons.

The Superseding Indictment in Threatt's case charges Threatt with four counts of either distributing or possessing with intent to distribute methamphetamine.  Counts One and Three do not mention a quantity of methamphetamine but Counts Five and Six charge that Threatt either distributed or possessed with intent to distribute *5 grams or more* of methamphetamine.  If Threatt would have proceeded to trial, a jury would have heard all the evidence contained in the factual section of Threatt's plea agreement and would have determined beyond a reasonable doubt the amount of methamphetamine attributable to him to justify a higher statutory penalty.  And the jury would not be limited to a finding of just 5 grams attributable to Threatt, especially where two counts mention no specific amount and two counts indicated 5 grams *or more* of methamphetamine.  And, the Probation Office would have to attribute to Threatt the drug amount decided by the jury beyond a reasonable doubt in determining the base offense level.  *See Alleyne v. United States*, 570 U.S. 99, 103 (2013) (the government cannot rely on a drug quantity attributable to a defendant that the Probation Officer included in the PSR for a higher statutory penalty when that drug quantity differed from the quantity found by the jury at trial).

But Threatt's case did not involve a jury determination of the amount of drugs attributable to him because he voluntarily chose to plead guilty.  In his binding plea agreement, Threatt agreed to forego a jury finding regarding the amount of methamphetamine attributable to him and *stipulated* that a total of 51.85 grams of methamphetamine was

20

attributable to him based on the amount of methamphetamine obtained in the four controlled

buys and the search of his home.  (Cr. Doc. 24 at 5-7).  At the plea hearing, the Government

read into the record the factual basis set out in the plea agreement that included the specific

amounts of methamphetamine attributable to Threatt it could prove based on the amount of

drugs involved in the controlled buys and found during the search of Threatt's home.  (Cr.

Doc. 49 at 43). Threatt testified under oath that he understood those facts, including the drug

quantities attributable to him, and that they were "substantially correct."  (Cr. Doc. 49 at 43).

And the court explained to Threatt that, if he went to trial, the jury would decide the amount

of drugs attributable to him beyond a reasonable doubt but reiterated to Threatt that he was

giving up that right by pleading guilty.  Threatt indicated he understood.  (Cr. Doc. 49 at 17,

18, 30).

And the PSR contained the *exact* facts to which Threatt agreed in the binding plea

agreement.  *See* (Cr. Docs. 24 & 35).  At the sentencing hearing, the court accepted the factual

findings in the PSR that set out the drug quantities attributable to Threatt.  (Cr. Doc. 47 at 4).

And the court specifically reminded Threatt at the sentencing hearing that he had "admitted

certain facts that bear upon the computation of the offense level."  (Cr. Doc. 47 ay 4).  So,

Threatt's counsel had no grounds on which to object to the amount of methamphetamine

attributable to Threatt and was not deficient for failing to file a meritless objection to the PSR.

*See Vanaman v. United States*, No. 16-15252-E, 2017 WL 11684637 *2 (11th Cir. Sept. 1,

2017) (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (finding that counsel

was not ineffective for failing to raise non-meritorious objections to the PSR).

To support his arguments, Threatt cites *United States v. Powell*, 360 F. Supp. 3d 134

(N.D.N.Y. 2019) and *United States v. Johnson*, No. 01-cr-543, 2019 WL 2590951 (N.D. Ill.

June 24, 2019).  But Threatt's reliance on *Powell* and *Johnson* to support his arguments is misplaced.  First, this court is bound by United States Supreme Court and Eleventh Circuit precedent—not by a New York or Illinois district court decision.  And both *Powell* and *Johnson* are inapplicable to Threatt's case.  *Powell* and *Johnson* involved whether the defendant was eligible for a retroactive sentence reduction for his drug offenses under the First Step Act of 2018.  *See Powell*, 360 F. Supp. 3d at 138-39; *Johnson*, 2019 WL 2590951 at *2-3.  In Threatt's case, the court sentenced him *after* the First Step Act of 2018 became effective and properly sentenced him under that Act.

And both Powell and Johnson went to trial on their drug charges and the jury found beyond a reasonable doubt the amount of cocaine attributable to them. *See Powell*, 360 F. Supp. 3d at 138-40; *Johnson*, 2019 WL 2590951 at *1.  Here, Threatt pled guilty and agreed in the binding plea agreement to the specific amount of drugs attributable to him. So, even if the court were bound to apply the *Powell* and *Johnson* cases, they would have no consequence.

Moreover, Threatt cannot show a reasonable probability that his conviction or sentence would have been any different even if counsel had explained the PSR more thoroughly or had objected to the amount of drugs attributable to Threatt.   Threatt has failed to show that either of these actions would have changed his mind about pleading guilty. And, as the court explained previously, any objection to the amount of drugs attributable to Threatt in the PSR would have failed.

So, Threatt cannot show deficient performance or prejudice and his claim fails.

***New Claim in Reply and "Citation of Additional Authority"***

Although Threatt agreed in his reply that his habeas motion included only the above four claims discussed above, he also included in his reply a section titled "Citation of New Authority," in which he cites a Supreme Court and Third Circuit case: *Wooden v. United States*, 142 S. Ct. 1063 (2022) and *United States v. Diaz*, 592 F.3d 467 (3rd Cir. 2010).  (Cv. Doc. 13 at 8).  He also submitted a "Citation of Additional New Authority," in which he more thoroughly discussed *Diaz*.  (Cv. Doc. 3).

Citing *Wooden*, Threatt seems to argue an additional ground in his reply that the court should have viewed the four controlled buys as "one episode because there was not an intervening arrest between the controlled sales" instead of allowing the Government to "charge Threatt with more drugs to enhance his sentence."  In essence, Threatt complains about the Government "piling it on" with four controlled buys to get Threatt more prison time.  Citing *Diaz*, Threatt also seems to add an additional ground alleging that his *two* convictions under § 924(C) violate the Double Jeopardy clause.  (Cv. Doc. 13 at 8).

Because these grounds are not based on an ineffective assistance of counsel claim, they are procedurally defaulted.  Generally, unless a defendant challenges a criminal conviction or sentence on direct appeal, he is barred from raising that claim in a habeas proceeding.  *Granda v. United States*, 990 F.3d 1272, 1286 (11th Cir. 2021) (internal quotations omitted).  Claims that are procedurally defaulted cannot succeed on collateral review unless the defendant can "(1) show cause to excuse the default *and* actual prejudice from the claimed error, or (2) show that he is actually innocent of the conviction.  *Granda*, 990 F.3d at 1286.

Here, Threatt did not raise these claims on direct appeal.  And he has failed to show or even allege any cause, actual prejudice, or actual innocence to overcome this procedural default.  So, these claims are procedurally defaulted.

Even if these claims are not procedurally defaulted, they still fail.  Neither *Wooden* nor *Diaz* apply to Threatt's case.  The Supreme court in *Wooden* held that the defendant's ten burglary convictions arising from a single criminal episode involving ten units in a single storage facility on the same day did not occur on different "occasions" and counted only as one prior conviction for purposes of the Armed Career Criminal Act.  *Wooden*, 142 S. Ct. at 1074.  The Supreme court stated that Wooden's convictions "arose from a closely related set of facts occurring *on the same night*, at the same place—making up . . . a single criminal episode."  *Id.* (internal citation and quotations omitted) (emphasis added).  But Threatt overlooks that Wooden dealt with separate prior convictions for enhancing a sentence under the ACCA—not with separate crimes charged in the indictment for which the defendant was sentenced.

Here, Threatt was *not* sentenced under the ACCA, so *Wooden* does not apply.  Moreover, even if it applied, Threat's drug transactions took place on *four* separate days many days apart and would constitute criminal activity on *four* separate occasions, even though they were charged in the same indictment.  *See United States v. Doctor*, 838 F. App'x 484, 486 (11th Cir. 2020) (finding that prior drug trafficking crimes charged in the same indictment that occurred days apart from each other were distinct crimes and satisfied the ACCA's "different occasions" requirement).

Threatt fares no better under *Diaz*.  First, this court is not bound by any ruling of the

24

Third Circuit.  And, even if it were, *Diaz* is inapplicable to Threatt's case.  The Third Circuit

held in *Diaz* that the imposition of *two* consecutive sentences for possession of a firearm in

furtherance of drug trafficking under § 924(c) when the defendant was convicted on only *one*

predicate drug offense violated Double Jeopardy.  *Diaz*, 592 F.3d at 473.  Here, Threatt pled

guilty to *two* drug trafficking offenses in Counts One and Three that served as the predicate

offenses for his *two* § 924(c) charges in Counts Two and Four.  Count One's drug trafficking

offense served as the predicate offense for the § 924(c) charge in Count Two, and Count

Three's drug trafficking offense served as the predicate offense for the § 924(c) charge in

Count Four.  *See* (Cr. Docs. 14 & 24). So, *Diaz* would be inapplicable to Threatt's case.

So, to the extent that Threatt raised two additional grounds not based on ineffective

assistance of counsel, those claims are procedurally defaulted or, in the alternative, without

merit.

### No Entitlement to Evidentiary Hearing

The court is not required to hold an evidentiary hearing in a § 2255 proceeding

"where the files and records of the case conclusively show that the movant is not entitled to

relief." *Diaz v. United States*, 799 F. App'x 685, 690 (11th Cir. 2020) (citing 28 U.S.C. §

2255(b).  For all the reasons explained above, the record belies Threatt's claims, and he has

failed to allege any facts that, if true, would entitle him to relief.  So, the court finds that an

evidentiary hearing is not warranted in his case.

### III.    CONCLUSION

For all the reasons above, Threatt's motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255 lacks merit and no hearing on this motion is warranted.

Therefore, the court finds that Threatt's motion should be **DENIED**.

The court will enter a separate Final Order.

**DONE** and **ORDERED** this 29th day of March, 2023.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE